## PUHALAHUA *vs.* M. PEDEROZA.

### CASE.   BEFORE McCULLY, J.

### APRIL TERM, 1879.

Plaintiff hired of Defendant a horse to use in an express wagon: Defendant warranted the horse as fit to drive in a milk-wagon: the first time Plaintiff harnessed and drove the horse, it kicked and broke the wagon and harness.

Held, from the evidence, that the horse was of previous good character and the trouble must have been due to Plaintiff's unskillfulness in harnessing or driving: and that the warranty, if any, was only that he was a good horse for a milk-wagon, not for an express wagon.

It appearing that Plaintiff had the horse on trial, Defendant is not liable for direct or consequential damage.

### DECISION OF McCULLY, J.

This action came before the Court by appeal from the acting Police Judge of Honolulu.

The declaration was as follows: "That the defendant was possessed of a horse which to his knowledge was a kicking and vicious horse unfit to be used or driven in a city express wagon, yet the defendant by falsely and fraudulently representing to the plaintiff that said horse was well broken, gentle and used and fit to be driven in a city express wagon and not a kicking or vicious horse, induced the plaintiff to take said horse on hire to use and drive in the plaintiff's express wagon in said Honolulu, and the plaintiff believing said representation to be true was thereby induced to take said horse of the defendant for hire to use and drive in the plaintiff's express wagon in said Honolulu, yet (as the defendant well knew) the said horse was not gentle, well broken or used to be driven in a city wagon or fit for use in the plaintiff's express wagon but was a kicking and vicious horse, and on the first day's use by the plaintiff in his said wagon, the said horse refused to go and kicked, jumped and

behaved in a vicious manner, and broke and seriously damaged the plaintiff's said express wagon and harness and thereby interrupted the plaintiff's said business to the plaintiff's damage $150. Wherefore the plaintiff asks judgment against the defendant for one hundred and fifty dollars and costs of Court."

In this Court both parties waived trial by jury and requested the justice holding the term to hear and determine the matter on testimony heard by said justice.

In respect to the transaction between the parties we have only their own testimony. The plaintiff says that he asked the defendant for a horse, that defendant told him he had a good horse to hire, a horse "maa i ke kaa waiu" i.e. accustomed to be driven in a milk wagon. The defendant says that the plaintiff solicited him very urgently for this horse, and that he at first refused saying that he wanted the horse for his own business, that of milkman. The plaintiff intended to use the horse in his hack wagon, as the defendant knew. The defendant harnessed or assisted to harness him in plaintiff's harness and attached him to plaintiff's hack and drove him a turn in view of plaintiff to show that he was a good and safe horse. On plaintiff's asking what would be the terms of the hiring, the defendant answered that he would not then set them, but that plaintiff should have the horse for two days on trial to see if he would like him. The plaintiff testifies that he then drove the horse home at Niupaipai, and after dinner harnessed him to come down town, that on starting from his premises the horse "oala"'d, that is, kicked or made a demonstration of kicking, though not to do any damage, and he proceeded with him; that after taking in some passengers, and while going on a level piece of road, without any known occasion for it the horse commenced to kick, breaking the carriage to the extent of $10 for repairs and the harness to the extent of $5: Koa witnessed the "oala" at starting.

There was testimony that the plaintiff was a skillful and careful driver.

The defendant testified strongly that he had driven the horse

for a year, or at times during a year in his milk wagon and that he had always found him free from vice and safe in every respect, both up and down hill. Three other witnesses who had known or driven the horse gave the like testimony. One of the plaintiff's witnesses testified that he had once seen the horse when on the milk round, and his driver was off the wagon, start off at a common trot, the defendant easily overtaking it. The defendant denies this, but such a start cannot be considered a vice, neither is it the fault through which the plaintiff suffered.

The plaintiff and Koa testified that the harness was sound and not tied up with string. The defendant to the contrary, and that he warned the plaintiff that his harness was not safe. Likewise Kikao, of whom plaintiff purchased the harness, testifies, that he bought it of one Hookano, and that it was old, broken and mended a year ago.

It is not clear to me that the condition of the harness affects the case in its origin, for there is no testimony that the harness broke, from which the horse fell to kicking, or that a stronger harness would have held him from breaking the carriage and harness. It can only be relevant in view of the greater breakage suffered and repairs needed in a weak or rotten harness if damages should be awarded.

The counsel for the plaintiff urges that in view of the skill and carefulness of the plaintiff as a driver it must be inferred that the accident arose from vice in the horse, against which the defendant had given an express warranty in terms, and an implied warranty from furnishing it as a horse suitable for the use which he knew the plaintiff intended him for, and that whether he gave such warranty or warranties, knowing that the horse was not fit for such use, or recklessly, without knowing what was the disposition and training of the horse, he was equally responsible to plaintiff for damages suffered in consequence of the horse proving vicious.

The defendant's counsel argues that many witnesses establish that the horse was a safe one, and that having been shown to have been used a long time without exhibiting vice, and this

accident occurring as soon as the plaintiff had harnessed and driven him, it must be inferred that it resulted from something for which the plaintiff is responsible.

On this point I cannot find a preponderance of evidence for the plaintiff. If a good previous character could be established by testimony it was established in this case and not contradicted. It seems that the horse as defendant had harnessed him drove quietly from the defendant's place down town, to the plaintiff's in the valley, but that when the plaintiff harnessed him again he immediately showed by a demonstration of kicking that something was wrong with him. If he had never before kicked in harness, as the proof positively is, I must infer that some fault in the plaintiff's handling occasioned it, at least I cannot find testimony to charge the defendant.

As to warranty, I incline to find as between the partly opposing statements of the parties, that the plaintiff solicited this horse from his knowledge of him in defendant's employment. The defendant said that he had always found him safe in his line of business, and he appears to have limited his recommendation to that, for the plaintiff quotes him as saying "maa i ke kaa waiu," and does not say that he gave any other recommendation than the vague one that he was "lio maikai," a good horse; does not say that he told him he was a good horse for the plaintiff's business. The defendant would seem to have specially avoided giving any warranty beyond his own experience of him, for although the transaction proposed was not a sale but a hiring which might be terminated at any time, he refused when asked to state terms until the plaintiff should have made trial for two days. He seems to have thrown it upon the plaintiff to judge for himself of the fitness of the horse for his purpose. Upon such a transaction it would be a hard rule to hold the defendant liable as upon a warranty for the direct and for the consequential damages which accrued to the plaintiff. The plaintiff's counsel cites 2 Allen, 347; Addison on Torts, p. 404; 117 Mass., 195; 103 Mass., 506; 18 Pick., 109; Bigelow's Leading Cases on Torts, p. 21, respecting

defendant's liability, and other authorities respecting the measure of damage.

It seems to me they do not apply in principle to this case, which in its essence may be stated thus: That the plaintiff wishing to hire the defendant's horse, had leave to take him on trial, the defendant only saying that as far as he had used him he was a good horse, and leaving the plaintiff to proceed on his own judgment.

I therefore find verdict for the defendant.

*A. S. Hartwell,* for plaintiff.

*J. M. Davidson,* for defendant.

April 24th, 1879.